M. A. ROBERTS, Trustee, Appellant, v. N. A. CHAMBERS, Executrix, et al.

Trustee: Liability of Sureties.   Where a will directs the appointment of a trustee to control the property of the estate, subject to the direction of the court, the bondsmen of one appointed "trustee under the will to take charge of the rents of real property" and who execute a bond undertaking faithful performance of the trust "according to the terms of the will and direction of the court," are liable for notes converted by the trustee; all parties, including the court, having dealt with the defaulter as having all the power designed to be conferred on him by the will. See Lees v. Wetmore, 58 Iowa, 180, 12 N. W. Rep. 238.

*Appeal from Wapello District Court.*—HON. JOSEPH C.
MITCHELL, Judge.

SATURDAY, MAY 19, 1894.

PROCEEDING in probate for the allowance of a
claim against the estate of W. E. Chambers, deceased.
There was a trial by the court, and an order, from
which the plaintiff appeals.—*Reversed.*

*Wm. McNett* and *M. A. Roberts* for appellant.

*W. A. Work* for appellees.

ROBINSON, J.—Alexander Simpson died testate in
December, 1883, and in March, 1884, his will was
admitted to probate. On the fourth day of that month,
Eleanor Simpson, the widow of the deceased, was
appointed administratrix of his estate. The will con-
tained certain provisions in her favor, which she refused
to accept, electing to take the share which was given
her by law. The will also contained paragraphs as
follows: "(3) I give, bequeath to my mute son,
Alexander B. Simpson, and Eleanor Simpson (my
wife), share and share alike, in and to all my rents,
income, and profits arising from my estate after the
taxes and outgoings pertaining to assessments, repairs,
and other expenses incident thereto are fully paid,
during their lifetime. And I declare from and after
the second marriage of my said wife, or the decease of
my said wife or my mute son, then, in that event, the
aforesaid profits, rents, and income shall be added to
the trust fund herein created. I hereby declare that if
said rents and profits, after deducting all taxes, assess-
ments, repairs, etc., is more than demanded by my said
wife, or required to support my son, Alexander B.,
comfortable, and provide for all his wants in case of
sickness, and for a decent burial, the said surplus shall

be, and the same is hereby, created a trust fund, to remain in the hands of the trustee hereinafter mentioned." "(7) It is my will and desire that the court having probate jurisdiction in Wapello county, Iowa, appoint a proper and suitable person guardian of my mute son, Alexander B. Simpson, and also a proper person as administrator and trustee, to carry out the provisions of this, my last will and testament, under the care and jurisdiction of the said court; and that my said wife, if she continues my widow (and is alive), be consulted as to the appointment of said administrator and trustee; and that no person be so appointed against whom she objects; and it is my express will that said trustee, or his appointed successor, shall have charge of my estate until the decease of my said wife and my said son, Alexander B. Simpson, or until his death and the re-marriage of my said wife, and at which time a distribution shall be made by said trustee of my said estate as provided in the following paragraph of this, my last will." The eighth paragraph provided for the distribution of the estate by the trustee upon the happening of an event which has not occurred. Soon after the death of her husband, Mrs. Simpson was also appointed guardian of the deaf-mute son mentioned in the will, and acted as his guardian until the year 1888, when her successor was appointed, and he is still acting. On the fourteenth day of March, 1884, the administratrix filed a petition for the appointment of W. E. Chambers as trustee under the will. As reasons for the appointment, the petition stated that the will provided for the appointment of a trustee, who should be under the charge and control of the court, to carry out the provisions of the will; that the estate was not indebted to any great extent, and that the personalty in the hands of the petitioner largely exceeded the indebtedness; that certain persons named were tenants of the estate, and paid monthly rents which were not

required to discharge debts, and which could at once become a part of the fund created by the will. The petition further stated that in making the application the petitioner only acted as administratrix, "to the end that the best interests of the estate be promoted and advanced and the property cared for." Chambers was appointed trustee on the seventeenth day of March, 1884, by an order which is in words as follows: "W. E. Chambers is hereby appointed trustee of the estate of Alexander Simpson, deceased, under the latter's will, to take charge of rents of real estate, and will execute a two thousand dollar bond." He gave a bond in the sum specified, which contained the following: "The condition of the above obligation is such that if the above-named W. E. Chambers, who has been appointed trustee of the will of Alexander Simpson, deceased, shall faithfully discharge the office and trust of such trustee according to the terms of said will, and as the court shall direct, then this obligation to be void, otherwise to remain in full force and virtue." In November, 1884, the administratrix delivered to Chambers the note and mortgage of Anthony Cooper and wife, which amounted to one thousand and thirty-three dollars, and belonged to the Simpson estate, and it was receipted for by Chambers, as trustee. In November, 1885, the administratrix was finally discharged. In July, 1888, M. J. Williams gave to Chambers, as trustee, a note for one hundred and seventy-five dollars, which bore interest at the rate of six per cent per annum, for an indebtedness due the Simpson estate. Both of these notes, with interest, were paid to Chambers. In September, 1890, he died, and the plaintiff was appointed his successor. He thereafter instituted this proceeding against the estate of Chambers to recover sums amounting to about two thousand dollars, which he alleges that Chambers had received as trustee, and which have

not been accounted for since his death.  A. H. Hamilton and W. B. Bonnifield, sureties on the bond of Chambers, were notified of this proceeding, and that the finding of the amount due on the claim made would be considered an adjudication against them.  The claim was allowed against the estate as one of the third class, and the amount due thereon was fixed at two thousand and ninety-five dollars and forty-one cents, but it was adjudged that the sureties were not liable for the amounts received on the Cooper and Williams notes, and that they were bound to account to the claimant on the bond only for the sum of two hundred and eighty-eight dollars.

The principal question to be determined by this court is whether the evidence justified the district court in finding that the sureties were not liable on account of the notes specified.

The various provisions of the will, when considered together, show clearly that it was the intention of the testator that the trustee should have control of all the property of the estate, and manage and distribute it as required by the terms of the will. The word "administrator" was probably used in the seventh paragraph to indicate that the trustee was expected to discharge the duties which would ordinarily devolve upon an administrator, but the duties of a trustee were the chief ones which the person appointed to execute the will was required to perform.  Why two persons were appointed to discharge the duties which one might have performed is not shown.  Ordinarily, the administrator would have taken charge of the Cooper note and mortgage and of the claim for which the Williams note was given.  The Cooper note did, in fact, pass into the possession of the administratrix, but it seems that it was not required to pay the debts of the estate; and the same is true of the Williams claim. Therefore both were properly placed in charge of the

trustee, to be managed by him until he should make final distribution of the property of the estate. It is said that the trustee was appointed for a specific purpose only,—that is, "to take charge of rents of real estate;" that he had no authority to do more, and that his sureties are not liable for his acts outside the scope of his appointment. There is some foundation for the claim in the fact that the petition for his appointment and the order of the court made special reference to rents of real estate. But the petition asked for his appointment for the purpose expressed, and Chambers was "appointed trustee of the estate;" and the words "to take charge of rents of real estate" should, at most, be regarded, only, as specifying the duties to be performed at the time of the appointment. The will provided in terms that the trustee should execute its provisions "under the care and jurisdiction" of the court. The petition asked for the appointment of a trustee, who should be under the charge and control of the court, to carry out the provisions of the will. The bond which the sureties signed made them liable for the faithful discharge by the trustee of the duties required by the terms of the will, and as the court should direct. The liability of the sureties was not limited to a proper discharge by the trustee of his duties with respect to the rents of real estate. The reports filed by the administratrix and the trustee from time to time showed that the Cooper note and mortgage had been transferred to the trustee, that he had received the Williams note, and that he had made collections on both. Some of these reports are shown to have been approved by the proper court, and it is claimed that all were. The court certainly had knowledge of the acts of the trustee in taking charge of the notes in question, and did not disapprove them. It is shown affirmatively that it approved the report which showed the transfer

to him of the Cooper note.   There is no doubt that, after the discharge of the administratrix, Chambers was treated by the court and all parties in interest as having all the powers which were designed to be conferred upon the trustee by the will. What he did in taking and collecting the notes in question was within the duties of trustee as created by the will, and was within the conditions of his bond. He received the notes only for the reason that he was trustee.   It would be unjust to all parties in interest, now to give any words used in the order of appointment the effect of a limitation of the powers which the will created, and which the testator intended that the trustee should exercise.   See *Lees v. Wetmore*, 58 Iowa, 180, 12 N. W. Rep. 238. We conclude that the estate of Chambers, and the sureties on his bond, as trustee, are liable for the notes in question.   The order of the district court, so far as it discharges the sureties, is REVERSED.